Christine CATIR, et al.

v.

COMMISSIONER OF the DEPARTMENT OF HUMAN SERVICES, et al.

Supreme Judicial Court of Maine.

Argued May 10, 1988.
Decided June 13, 1988.

---

Timothy M. Vogel (orally), Portland, Neville Woodruff, Legal Services for the Elderly, Augusta, for plaintiffs.

Christopher Beach, Sue A. Jerome (orally), Asst. Attys. Gen., Dept. of Human Services, Augusta, for defendants.

Jere Clifford, Richard Beauchesne (orally), Lewiston, for Gorham Manor.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiffs, Christine Catir and Marion Durgin, appeal from a Superior Court order (Cumberland County) granting summary judgment in favor of defendants, Gorham Manor and the Department of Human Services. Plaintiffs argue that the Superior Court erred in ruling that a nursing home is not prohibited from withdrawing from the state and federal Medicaid program by the Maine Human Rights Act or the applicable licensing statute and regulations. We find no error and we affirm the summary judgment.

## I.

The undisputed facts may be stated as follows: Gorham Manor is a licensed 24-bed nursing home located in Gorham. Along with all other nursing home facilities in the State, Gorham Manor accepted state and federal Medicaid reimbursement for qualifying resident patients pursuant to a standard Medicaid "provider agreement" with the Department of Human Services.

In 1986, the nursing home notified the Department that as of September 1, 1986, it would no longer participate in the Medicaid program. Although the Department attempted to persuade the institution to reconsider the decision to withdraw, no legal action was taken because the Department agrees that state and federal law allows a nursing home provider to withdraw from the Medicaid system. Gorham Manor informed its patients that it would no longer accept the Medicaid rate of payment and would no longer keep patients unable to pay the higher private rate. Plaintiffs, two of the home's four Medicaid patients, instituted the present action seeking *inter alia* an order enjoining the removal of plaintiffs from the home and a declaration that the nursing home is obligated to accept Medicaid reimbursement as payment in full. After granting preliminary relief to preserve the status quo, the Superior Court denied plaintiffs' motion to certify the action as a class action and granted summary judgment in favor of Gorham Manor and the Department. It is from this order that plaintiffs appeal.

## II.

Plaintiffs argue initially that the Maine Human Rights Act prohibits the termination of nursing home services to Medicaid recipients. The portion of the Act designated as relevant by plaintiffs provides as follows:

It shall be unlawful housing discrimination, in violation of this Act:

.    .    .    .    .

For any person furnishing rental premises or public accommodations *to refuse to rent or impose different terms of tenancy* to any individual who is a recipient of federal, state or local public assistance, including medical assistance and housing subsidies primarily because of such individual's status as such recipient. 5 M.R.S.A. § 4582 (Pamph.1987) (emphasis supplied). Summary judgment was appropriately granted on this claim because there is no allegation or suggestion that the nursing home "refuse[d] to rent or impose[d] different terms of tenancy" on

Medicaid recipients. On the contrary, plaintiffs' affidavits clearly establish that the nursing home refused to accept the lower Medicaid payment and subjected the recipients to the same terms of tenancy offered to any other individual. The equality of housing access secured by the Maine Human Rights Act is premised upon the assumption that the persons seeking the housing have the ability to pay. 5 M.R.S.A. § 4581 (1979).

■ Plaintiffs next offer the licensing law for nursing homes as an alternative basis for the relief requested. A nursing home subject to licensure is defined as follows:

[A] facility which is operated in connection with a hospital, or in which nursing care and medical services are prescribed by or performed under the general direction of persons licensed to practice medicine or surgery in the State, for the accommodation of convalescent or other persons who are not acutely ill and not in need of hospital care, but who do require skilled nursing care and related medical services. The term "nursing home" shall be restricted to those facilities, the purpose of which is to provide skilled nursing care and related medical services for a period of not less than 24 hours per day to individuals admitted because of illness, disease or physical or mental infirmity and *which provides a community service.*

22 M.R.S.A. § 1812–A (1980) (emphasis supplied). Plaintiffs argue that by restricting the definition of nursing homes to a facility "which provides a community service", the Legislature mandated that all licensed nursing homes participate in the Medicaid program. Such an assertion finds no support in either the language or legislative history of section 1812–A. Plaintiffs' attempt to buttress their argument by calling our attention to the fact that the reference to "community service" appears to have been derived from the federal Hill–Burton Act. 42 U.S.C.A. § 291c(e) (1982). When the Legislature added "community service" to the definition of a nursing home in 1965, however, the parallel language in the Hill–Burton Act did not require Medicaid participation by federally funded nursing homes. Not until 1974 were the federal regulations amended to mandate participation in the Medicaid program by federally assisted care facilities.[1] Even if we assume that the definitional section of a licensing statute could impose obligations upon a licensee, plaintiffs' argument is far too attenuated to support the construction of the naked reference to "community service" in section 1812–A as mandating participation in the Medicaid program.

■ Finally, plaintiffs argue that Gorham Manor's termination of its Medicaid services violates the Department's Medicaid discrimination regulations.[2] The

1. *See* 42 C.F.R. § 124.603(c)(1) (1987) for the current version of the regulatory requirement. A detailed account of the legislative history of the Hill–Burton Act is set forth in *American Hosp. Ass'n. v. Schweiker,* 721 F.2d 170, 172 (7th Cir.1983), cert. denied, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984).

2. The Departmental licensing regulations that plaintiffs assert prohibit Gorham Manor from withdrawing from the Medicaid program are:

13.A.2. [The written policies of each facility shall ensure that each resident admitted to the nursing facility] [i]s transferred or discharged to another facility or is moved to another room within the facility, not because of Medicaid status, but only for medical reasons, or for his/her welfare or that of other residents, or for nonpayment, for his/her stay (except as prohibited by the Title XIX program), and is given reasonable advance notice to ensure orderly transfer to discharge, and

such actions are documented in the medical record.

10.B. Written policies

The written policies of each facility shall be consistent with State Licensing and Federal Certification requirements and shall include:

10.B.8. Provision for the types of residents that the facility will accept, based on sex, mental status, source of referral, etc. Policies should also provide that the residents will be accepted regardless of race, color, national origin, reimbursement source;

10.B.12. Provision for prevention of resident transfer from one part of the facility to another, except from a private room, solely because of Medicaid status;

10.B.13. Provision for prevention of discharging a patient from a nursing home solely because of Medicaid status.

These regulations are promulgated under the authority set forth in 22 M.R.S.A. § 1820 (1980).

Department contends, however, that its regulations concerning Medicaid discrimination apply only to those nursing homes that choose to service Medicaid patients, and do not prevent nursing homes from withdrawing from the Medicaid program. The interpretation of regulations by the agency that promulgated them is entitled to great deference by this Court and will not be set aside unless clearly erroneous. *Central Maine Power Co. v. Public Utilities Commission,* 455 A.2d 34, 44 (Me. 1983); *see Walters v. Petrolane–Northeast Gas Service, Inc.,* 425 A.2d 968, 972–973 (Me.1981). We find no error in this case.

The entry must be:

Judgment affirmed.

All concurring.